1  Afshin Siman SBN 309956
2  afshinsiman@gmail.com
   11040 Santa Monica Blvd. Ste.212
3  Los Angeles, CA 90025
   Telephone:  (310) 254-7339
4

5
   *Attorney for Plaintiff and the putative Class*
6  *Additional attorneys on the signature page*

7
            **UNITED STATES DISTRICT COURT**
8        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

10 **JOHN SIMONICH**, individually and        Case No.
   on behalf of all others similarly situated,   **2:17-cv
11                                                06067**
12              *Plaintiff,*

13                                            **CLASS ACTION COMPLAINT**
   *v.*
14                                            **DEMAND FOR JURY TRIAL**

15 **ONSHIFT, INC.**, a Delaware limited
   liability company,
16
17              *Defendant.*

18

19      **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

20      Plaintiff John Simonich ("Plaintiff") brings this Class Action Complaint and

21 Demand for Jury Trial ("Complaint") against Defendant OnShift, Inc. ("OnShift" or

22 "Defendant") to stop Defendant's practice of sending unsolicited solicitation text

23 messages to cellular telephones without consent (and even after consumers request for

24 such messages to stop) and to obtain redress, including injunctive relief, for all persons

25 injured by its conduct. Plaintiff Simonich, for his Complaint, alleges as follows upon

26

27

28

personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.     Defendant OnShift delivers to its customers a suite of labor-management software in the form of a mobile application that helps its customers hire, schedule, and otherwise engage with their employees in the healthcare industry.[1] Defendant states that its mobile application for employers and employees can help accommodate their scheduling needs. For example, by using Defendant's mobile application, employees can request open employment shifts, fill-ins, and time-off - all from their cellular telephones.[2] In other words, employers and employees alike use Defendant's mobile application to assist them with their scheduling needs.

2.     Defendant markets itself to clients who manage retirement communities, nursing homes, assisted living communities, and others in the healthcare spectrum.

3.     Unfortunately for consumers, Defendant sends text messages on behalf of its agent(s) to consumers who have not signed up for Defendant's services and to those who are not employed or associated with any one of Defendant's affiliates. That is, in an attempt to solicit a response from consumers who have not signed up for Defendant's services, Defendant conducted (and continues to conduct) a wide-scale

---

[1] http://www.linkedin.com/company/onshift

[2] https://www.onshift.com/basic-page/'tis-season-onshift's-mobile-app

campaign that features the sending of repeated unsolicited text messages to consumers' cellular telephones—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

5.      Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send text messages to consumers' cellular telephone numbers.

**A.** **<u>Bulk SMS Marketing</u>**

6.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk advertisement and/or solicitation messages cheaply.

7.      Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication

used primarily between telephones and is therefore consistent with the definition of a "call").

8.     Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

9.     When an SMS message call is successfully made, the recipient's cell phone alerts him or her that a message has been received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.   Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

10.     Defendant is a company that uses cloud-based human capital management software in the form of a mobile application to solve labor-management challenges in the healthcare industry.[3]

11.     Defendant sends text messages to consumers' cellular telephones in an attempt to solicit business on behalf of itself and/or its clients.

---

[3] *Id.*

12.     Defendant sends solicitation text messages from "short code" 79245. A short code is akin to a telephone number for text messages.

13.     In sending these solicitation text messages, Defendant takes no steps to acquire the oral or written prior express consent of the Plaintiff, or the Class Members who received the unsolicited text messages.

14.     Defendant made, or had made on its behalf, the same (or substantially the same) solicitation text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

15.     In sending the unsolicited text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

16.     Defendant was and is aware that its unsolicited text messages were and are being made without the prior express written consent of the text message recipients.

17.     Defendant knows, or is reckless in not knowing, that its SMS text messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

18.     By sending the unsolicited text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

19.     In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

**C. Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out**

20.     Defendant also sends unauthorized text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands. Even if Defendant had obtained some form of prior express consent from Plaintiff other members of the Autodialed Replied

Stop Call Class (it did not), Defendant was still required to honor each STOP request as a termination of any prior consent. Accordingly, any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was sent without prior express consent in violation of the TCPA.

21.    To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

22.    The FCC has made it clear that companies must provide an opt-out mechanism in their text messages and that--at most--a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out. *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20-278, 27 FCC Rcd. 15391 (Nov. 29, 2012) ("*SoundBite Ruling")*; *see also Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."); *Munro v. King Broad, Co.,* No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggest that consent may be revoked under the TCPA and that if messages

continue after consent is revoked, those messages violate the TCPA.") (unpublished

decision) (collecting cases).

23. The FCC further stated, "[a]s an initial matter, we note the Commission's

statement in the *Soundbite Declaratory Ruling* that "neither the text of the TCPA nor

its legislative history directly addresses the circumstances under which prior express

consent is deemed revoked." We thus may provide a reasonable construction of the

TCPA's terms, and *clarify that consumers may revoke consent in any manner that*

*clearly expresses a desire not to receive further messages*, and that callers may not

infringe on that ability by designating an exclusive means to revoke." (emphasis

added).

24. Indeed, the MMA's October 2012 U.S. Consumer Best Practices for

Messaging echoes this standing by stating, "[a] subscriber must be able to stop

participating and receiving messages from any program by sending STOP to the short

code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also

be opt-out key words for all programs; however content providers should feature the

word STOP in their advertising and messaging. . . When sent, these words cancel the

subscriber's previous opt-in for messaging." Further, "[t]he content provider must

record and store all opt-out transactions."

25.    CTIA[4] similarly advises that standards for processing opt-out messages in shortcode programs:

> Functioning opt-out mechanisms are crucial for all text messaging programs. Programs must always acknowledge and respect customers' requests to opt out of programs
> …
> Short code programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT by sending an opt-out message and, if the user is subscribed, by opting the user out of the program. Subsequent text, punctuation, capitalization, or some combination thereof must not interfere with opt-out keyword functionality.[5]

26.    CTIA additionally provides guidance on standards for notifying cellular telephone users about their ability to opt-out of text message programs:

> Recurring-messages programs must also display opt-out instructions at program opt-in and at regular intervals in content or service messages, at least once per month. Opt-out information must be displayed on the advertisement. A program may deliver one final message to confirm a user has opted out successfully, but no additional messages may be sent after the user indicates a desire to cancel a short code program.[6]

27.    Again, Defendant simply ignores the FCC ruling and these accepted industry guidelines. Instead, Defendant fails to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

---

[4] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

[5] *See,* CTIA's Short Code Monitoring Program, *Short Code Monitoring Handbook*, Version 1.6, effective July 16, 2016, page 4, available at https://www.usshortcodes.com/info/static/docs/CTIA%20Short%20Code%20Monitoring%20Handbook%20v1.5.2.pdf

[6] *Id.*

28.    Despite receiving express stop requests from Plaintiff and other cellular subscribers, Defendant continues to send automated solicitation text messages to these subscribers.

29.    Defendant knows, or acts in conscience disregard of the fact that its SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design, sent to Defendant's short code and telephone number, 79245 and 760-678-4563, respectively, thereby directly informing Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

30.    Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.

31.    By sending the text messages at issue in this Complaint as discussed *supra*, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

32.     In response to Defendant's unlawful conduct, Plaintiff files this action seeking an injunction requiring Defendant to cease all unsolicited solicitation text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

33.     Plaintiff John Simonich is a natural person and resident of Covina, California.

34.     Defendant OnShift, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 1621 Euclid Ave., Ste. 2150, Cleveland, Ohio 44115. Defendant conducts business throughout this District, the State of California, and the United States.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

36.     This Court has personal jurisdiction over Defendant because Defendant does significant business in the State of California, in this District, and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

37.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business in this District and the wrongful

conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## FACTS SPECIFIC TO PLAINTIFF JOHN SIMONICH

38.     On Friday, December 30, 2016 at 2:40 p.m., Plaintiff received an unsolicited text message from OnShift on his cellular telephone from telephone number 760-678-4563.  The December 30, 2016 text message attempted to solicit Plaintiff to attend a medical appointment that he had never scheduled.  It stated, "Appt: John on 01/04/2017 @ 02:00 PM at VCC: Lake Elsinore.  Reply 1 to confirm or 2 to cancel.  Call 760-631-5000 w/ questions To opt out reply STOP[.]"

39.     Plaintiff replied to the aforementioned text by pressing and sending "2" for the sole purpose to get the texts from Defendant OnShift stop.

40.     Despite Plaintiff's attempt to opt out, on Tuesday, January 3, 2017 at 2:30 p.m., Plaintiff received the *exact same* text message as the December 30, 2017 text message.  Again, this text message stated, "Appt: John on 01/04/2017 @ 02:00 PM at VCC: Lake Elsinore. Reply 1 to confirm or 2 to cancel.  Call 760-631-5000 w/ questions To opt out reply STOP[.]

41.     Again, for the sole purpose of getting the text messages stop, Plaintiff pressed and sent "2."

42.     The following are screenshots taken from Plaintiff's cellular telephone displaying the aforementioned messages:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



43.     Unfortunately, Plaintiff continued to receive unwanted text messages from OnShift.  On Thursday, January 12, 2017 at 3:22 p.m., Plaintiff received an unsolicited solicitation text message from OnShift on his cellular telephone.  This time the text message came from SMS short code 79245. This text message attempted to solicit Plaintiff by stating, "Alert: 2 openings!!! Caregiver PM shift At Memory Care Friday 1/13/17.reply w/33314843 & your response[.]"

44.     Plaintiff replied to the aforementioned text solicitation by typing, "I'm on the do not call list[.]"

45.     Despite Plaintiff's attempt to opt-out again, OnShift sent another text message on January 15, 2017 at 9:02 a.m. from SMS short code 79245 that read, "Alert: Opening at BHG for Orientation shift from 6:00 AM-2:15 PM on January 15 At AL.reply w/33380246 & your response[.]"

46.     Plaintiff responded to this text solicitation by stating, "Stop[.]"

47.     This time, at 10:07 p.m., OnShift replied back, "Alert: You are unsubscribed from OnShift alerts via shortcode. No more messages will be sent via shortcode. Reply HELP for help or email support@onshift.com.reply w/33486876 & your response[.]"

48.     The following are screenshots taken from Plaintiff's cellular telephone displaying the aforementioned messages:



49.     OnShift's reply text message confirmed that OnShift was the entity responsible for sending the unsolicited text messages to Plaintiff's cellular telephone.

50.     Still, despite Plaintiff's proper attempt to opt out of future text messages, OnShift continued to send text messages to him.  On or around January 31, 2017, OnShift sent another text message to Plaintiff from SMS shortcode 79245: "Alert: BHO needs 2 Caregivers for 6:00AM-2:15PM shift on Jan 31 At MC. Reply w/33897499& your response[.]"  On February 1, 2017, Plaintiff received another text message from SMS shortcode 79245: "Alert: BHO needs Caregiver for 2:00PM-10:15PM shift on Feb 1 At MC.reply 2/33897679 & your response[.]"  And again on February 2, 2017, Plaintiff received another text message from SMS shortcode 79245: "Alert: BHO needs Caregiver for 2:00PM-10:15PM shift on Feb 2 At MC.reply w/33897699 & your response[.]"

51.     The SMS short code provided in the text messages, 79245, belongs to and/or is used by OnShift.  Upon information and good-faith belief, the telephone number 760-678-4563 also belongs to OnShift.

52.     Plaintiff does not have a relationship with OnShift, he has never provided his telephone number directly to OnShift, or requested that OnShift place calls and/or text messages to him or alert him of its services. Simply put, Plaintiff has never provided his prior express written consent to OnShift to send text messages to him and has no business relationship with OnShift.  Additionally, Plaintiff has never worked in the healthcare industry.

53.     By sending unauthorized text messages as alleged herein, OnShift has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the text messages disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone. In the present case, a consumer could be subjected to many unsolicited text messages, as OnShift does not provide the proper instructions or a mechanism to opt out.

54.     In order to redress these injuries, Plaintiff, on behalf of himself and the Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

55.     On behalf of the proposed Classes, Plaintiff seeks an injunction requiring OnShift to cease all unsolicited solicitation text messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

56.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following two Classes:

**<u>Autodialed No Consent Class:</u>** All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of

Defendant) sent text messages, (2) to the person's cellular telephone number, (3) for the purpose of promoting an business and service, and(4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**Autodialed Replied Stop Call Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint to the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) on the person's cellular telephone number, and (3) for the purpose of promoting a business or service, (4) after the person informed Defendant to stop sending them text messages.

57.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

58.     On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

59.     There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may

affect individual members of the Classes. Common questions for the Classes that may

be answered in a single stroke include, but are not necessarily limited to the following:

(a) whether Defendant's conduct constitutes a violation of the TCPA;

(b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;;

(d) whether Defendant obtained prior express written consent to contact any class members;

(e) whether members of the Autodialed Replied Stop Class revoked their consent by responding STOP, END, CANCEL or with similar language; and

(f) to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

60. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the solicitation text messages alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting solicitation text messages. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by

Defendant's wrongful conduct. Plaintiff, like all members of the Classes, received unsolicited solicitation text messages from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

61.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interests antagonistic to the interests of other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

62.     The suit may be maintained as a class action under the Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  As the messages continue to be sent in spite of Plaintiff's and the Class members' STOP requests, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized solicitation text messages.  Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the

wireless solicitation text messages at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes.

63. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited solicitation text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Autodialed No Consent Class)

65.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

66.     Defendant and/or its agents agent transmitted unsolicited solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

67.     These solicitation text messages were made *en masse* without human intervention and without the prior express written consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

68.     At no time did Defendant obtain prior express written consent from the Plaintiff orally or in writing to receive solicitation text messages. Also, at no time did Defendant obtain prior express written consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive solicitation text messages was not a condition of the purchase of any property or service.

69.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

70.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

///

///

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Replied Stop Call Class)**

71.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

72.     Defendant and/or its agent transmitted unsolicited solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Replied Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

73.     The telephone dialing equipment utilized by Defendant and/or its agents, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

74.     These unsolicited solicitation text messages were made *en masse* and without the consent of the Plaintiff and the other members of the Autodialed Replied Stop Call Class to receive such solicitation text messages. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT." or "CANCEL," or words similar thereto.

75.     The solicitation text messages to Plaintiff and the Autodialed Replied Stop Class were made after any consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL or word similar thereto. This alone violates the TCPA.

76.     Additionally, Defendant's supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cellular telephone that results in a reduction of the user's allowable data.

77.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

78.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant was to temporarily place them on hold.

79.     As a result of such conduct, Plaintiff and the other members of the Autodialed Replied Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

80.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Replied Stop Class. Defendant received the STOP requests and similar opt out instructions and therefore was on notice that its solicitation text messages were being transmitted in violation of the TCPA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff John Simonich, individually and on behalf of the Classes, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Simonich as the representative of the Classes and appointing his attorneys as Class Counsel;

2.     An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

3.     An injunction requiring Defendant to cease all unsolicited text messaging activity, to honor opt-out requests, and to otherwise protect the interests of the Classes;

4.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

5.     Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

///

///

Respectfully Submitted,

**JOHN SIMONICH**, individually and on behalf of Classes of similarly situated individuals

Dated: August 15, 2017       By:  /s/Afshin Siman_____
                          One of Plaintiff's Attorneys

Blake J. Dugger*
blake@stefancoleman.com

LAW OFFICES OF STEFAN COLEMAN, P.A.
1011 W. Colter St., #236
Phoenix, Arizona 85103
Telephone: (602) 441-3709
Facsimile: (888) 498-8946

Attorneys for Plaintiff and the Putative Classes

*pro hac vice motion to be filed*